

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| TRACY L. SANDERS, | ) | |
| | ) | **WD85554 consolidated with** |
| Appellant, | ) | **WD85555** |
| | ) | |
| v. | ) | **OPINION FILED: January 31, 2023** |
| | ) | |
| DIVISION OF EMPLOYMENT | ) | |
| SECURITY, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Labor and Industrial Relations Commission**

**Before Division One:  Anthony Rex Gabbert, Presiding Judge,
W. Douglas Thomson, Judge and Janet Sutton, Judge**

Tracy Sanders (Sanders) appeals two decisions of the Labor and Industrial Relations Commission (the Commission) affirming two separate determinations by the Division of Employment Security (the Division), which were consolidated on appeal before this Court.  In August 2020, the Division determined that Sanders was ineligible for unemployment benefits after Sanders was furloughed from her job at Macy's Inc. (Employer).  In November 2020, the Division determined that Sanders was overpaid unemployment benefits.  Sanders appealed both determinations with the Division's Appeals Tribunal (the Tribunal) on February 3, 2021, more than thirty days after the Division allegedly mailed her its determinations.  The Tribunal denied both appeals as

untimely, also finding that Sanders lacked good cause for extending the appeals period as to the ineligibility determination. The Commission affirmed both decisions. Sanders appeals. We reverse and remand.

## Factual and Procedural Background

We have thoroughly reviewed the briefs, record on appeal, and appendices, and we convey the following facts that are capable of discovery. *See, e.g., Biswas v. Div. of Emp. Sec.*, 496 S.W.3d 587, 588 (Mo. App. E.D. 2016). Employer furloughed Sanders in March 2020 due to the COVID-19 pandemic. Employer intended this furlough as "a temporary layoff from ALL work activity." After Employer furloughed Sanders, Employer advised that Sanders could apply for unemployment benefits through the Division, which she did in April 2020.

In June 2020, Sanders' Employer notified her that it was restructuring. Employer told Sanders that she would be "part of [Employer's] go-forward team," but Sanders' "return date h[ad] not been finalized." Shortly thereafter, Sanders returned to work with Employer in early July 2020.

### The Ineligibility Determination

Less than two months after Sanders returned to work, on August 24, 2020, the Division determined that Sanders was "ineligible from 04/12/2020 because [Sanders] [wa]s not unemployed," since Sanders was "on a leave of absence with an expectation to return to work," citing "personal medical" leave as the reason. Employer incorrectly stated medical leave, rather than furlough, as Sanders' reason for leaving work. The ineligibility determination then stated that Sanders could "file an appeal not later than 09-23-2020."

The Division stated that it mailed Sanders the first determination letter of

2

ineligibility on August 24, 2020, and listed this August date as the "determination date" on its appeals documentation including on the initial determination and Tribunal orders. The Tribunal, however, later found in its decision issued on the appeal that Sanders "did not receive the initial determination that was sent to her." It also appears from Sanders' hearing testimony that Sanders was not "able to go online to [her] UInteract account and check correspondence during this time," and only gained access to UInteract starting the next year.[1]

**The Overpayment of Benefits Determination**

On November 18, 2020, about three months after the Division claims it mailed Sanders the initial ineligibility determination, the Division determined that because Sanders was ineligible for unemployment benefits, she was overpaid unemployment benefits under section 288.380.13. The determination stated that Sanders could appeal "no later than 12-18-2020." The Division assessed that Sanders was overpaid $1,199.00 in state benefits. The Division stated it mailed Sanders the second determination letter on November 18, 2020, listing this November date as the "determination date" on the second determination and on Tribunal orders. But the Tribunal also found in its decision issued on appeal that Sanders did not receive this November determination, writing, Sanders "did not receive the notice of determination as originally mailed . . . ." Again, Sanders did not have access to her UInteract unemployment portal during this time to otherwise discover this determination.

---

[1] "UInteract is the Division's online website where individual claimants have their own accounts." *Harden v. Div. of Emp. Sec.*, 655 S.W.3d 796, n.3 (Mo. App. S.D. 2022).

**The Appeals Tribunal Hearings**

On February 3, 2021, Sanders filed one appeal challenging both the ineligibility determination and the overpayment determination. Upon receiving this appeal, the Division duplicated the appeal document and opened two cases, bifurcating the appeal despite the single filing. The record is devoid of any evidence that Sanders received notice that the Division bifurcated her appeal.

After receiving Sanders' appeal, the Division then issued an order on April 16, 2021, dismissing Sanders' benefits overpayment appeal as untimely. The record, however, lacks any order or other document showing that the Division dismissed Sanders' ineligibility appeal.[2] Five days later, Sanders then requested the Division reconsider its benefits overpayment order of dismissal, and the Division then scheduled two phone hearings for November 18, 2021, apparently setting aside both dismissals.

The Division scheduled an 8:15 am hearing for the initial ineligibility determination, considering the issues of (1) whether Sanders was unemployed and (2) whether the appeal was timely. The Division also scheduled a 9:15 am hearing for the benefits overpayment determination, considering the issues of (1) whether Sanders was overpaid benefits due to a period of ineligibility and (2) whether the appeal was timely.

---

[2] While there appear to be two different orders in the record dismissing Sanders' appeals both mailed on April 16, 2021, both orders refer to the Nov. 18, 2020, overpayment determination and not to Sanders' ineligibility determination. We discern that one order, with the appeal number 2173746, matches the appeals number and contents for Sanders' benefits overpayment appeal.

Meanwhile, the other April order, with the appeal number 2173748, does not match any Division appeal number in the record and does not contain any statement relating to Sanders' ineligibility of benefits appeal. Neither letter references the August 24, 2020, ineligibility determination. Thus, we are left without any procedural documentation as to why the Division scheduled a phone hearing for Sanders' ineligibility appeal.

Also, it is apparent from the Division's ensuing proceedings that the Division set aside *both* appeal dismissals, but we cannot find any record evidence confirming that the Division set aside Sanders' ineligibility appeal dismissal.

4

Sanders attended only the 9:15 am hearing for the benefits overpayment determination.[3]

At first, the Division entered a dismissal against Sanders for her failure to attend the 8:15 am hearing. But, upon Sanders' request for reconsideration, the Division agreed to hear the issue of whether Sanders' ineligibility appeal was timely on the condition that Sanders showed good cause for failing to attend the 8:15 am hearing. The Division then rescheduled the phone hearing for the ineligibility appeal, which was held on January 12, 2022, at 10:15 am. This meant the Tribunal held the ineligibility hearing *after* the benefits overpayment hearing.

**Sanders' Timeliness Testimony**

In her brief, Sanders states that she did not receive notice of the Division's determinations that she was ineligible for unemployment benefits and that she was overpaid in benefits. True, the first determination—that Sanders was ineligible for unemployment benefits—states that it was mailed to her on "08-24-2020" and the second determination—that Sanders was overpaid unemployment benefits—states it was mailed to her on "11-18-20." Sanders contends she did not receive these letters, but only received notice of these determinations on January 20, 2021, through the overpayment assessments. Sanders also says that when she finally received two Order Assessment of Overpaid Benefits notices via certified mail, the assessments stated that the appeal deadline was "02-19-2021."[4]

---

[3] Sanders did not receive notice of her 8:15 am telephone hearing within the appropriate time frame. The Division sent notice via mail on November 16, 2021, notifying Sanders of her November 18, 2021, hearing. This short notice of hearing violates the Division's own regulations that "Notices shall be mailed at least seven (7) days prior to the date of the hearing." 8 C.S.R. 10-5.015(5)(A).

[4] Sanders directs this Court to page 038 of the WD85554 legal file and to page 064 of the WD85555 transcript, both of which refer to the same document. This document, however, omits the first page by which we may gain context for the statement "This assessment will become final unless a petition is filed with the Division of Employment Security by 02-19-2021." Though Sanders includes this

During both phone hearings, Sanders reiterated that she first became aware of an issue with her unemployment eligibility and benefits when she received a certified letter in January 2021. In Sanders' November 18, 2021, hearing for the benefits overpayment, Sanders likewise stated that she did not receive the November determination and became aware that she needed to appeal it when she received a certified letter "around the first part of the year."

Indeed, during the January 2022 phone hearing for her ineligibility determination, Sanders repeated that she received a "certified letter" permitting her to "file an appeal by February the 19th." Sanders also stated that she first learned that she was ineligible for unemployment benefits "sometime around November, December of 2020" after receiving a certified letter, what we discern to be the Order Assessment of Overpaid Benefits. Sanders further testified that she contacted the Division around "the first of January" after receiving this letter.[5] Both overpayment determinations Sanders received via certified mail state that they were mailed on January 20, 2021,

_____

document out of context, the Division provides helpful context as to why this document permits a February 19, 2021 appeal date. In its decision dated March 22, 2022, the Tribunal stated:

> The claimant testified that she only realized there was a problem with her unemployment benefits when she received a Notice of Order Assessment of Overpaid Benefits by certified mail in January 2021 which included instructions that an appeal to the assessment could be filed no later than February 19, 2021.

We conclude the document included on page 038 of the WD85554 legal file and on page 064 of the WD85555 legal file is the appeal date of the Order Assessment of Overpaid Benefits, not the appeal date for the two prior determinations. But, we also discern from the record that this letter was the first correspondence Sanders testified she received regarding both August and November determinations, and agree with the Tribunal and Commission's factual finding that Sanders did not receive either original determination.

[5] Because we conclude these certified letters were notices of the Order of Assessment of Overpaid Benefits, which were mailed on January 20, 2021, we lack sufficient information to discern from where Sanders supplied this January 1, 2021, date.

6

and the record does not contain any other certified letters except the hearing packets mailed to Sanders.

**The Appeals Tribunal and Commission's Decisions**

Despite Sanders' testimony that she did not receive either determination letter and the Tribunal agreeing she did not receive either, the Tribunal made its decisions *in reverse order*. First, on March 7, 2022, the Tribunal denied Sanders' benefits overpayment appeal despite Sanders' ineligibility appeal still pending. The Tribunal determined that the Division mailed Sanders the overpayment determination on November 18, 2020, and that Sanders "filed her appeal on February 3, 2021." Therefore, the Tribunal concluded, "The deputy's determination has become final" and that Sanders "did not submit her appeal prior to the stated deadline contained in the notice" even though Sanders "did not receive the notice of determination as originally mailed." Sanders' ineligibility appeal remained outstanding.

The Tribunal's contradictory decision compounded this procedural confusion. Notably, in the decision's "Conclusions of Law" section, the Tribunal stated, "The first issue in this matter is whether [Sanders] had good cause for her untimely appeal." Then, in the same section, the Tribunal declared that good cause determinations *do not apply* to appeals of benefits overpayments like Sanders'. The decision stated that "[t]he statute does not address good cause for determinations of overpayments such as this one, pursuant to Section 288.380.13, RSMo," thus, "[t]he Appeals Tribunal cannot consider an exception for good cause where there is no provision in the law." Finally, contradicting this legal conclusion that good cause does not apply, the Tribunal decided, "Good cause has not been shown to extend the thirty-day time period to file an appeal."

7

Then, over two weeks later, on March 22, 2022, the Tribunal issued its decision on Sanders' ineligibility appeal, concluding that Sanders' "appeal was filed on February 3, 2021, and the last day by which to file a timely appeal was September 23, 2020," so Sanders' ineligibility appeal "was not timely." The Tribunal also found that Sanders did not demonstrate good cause. The Tribunal so concluded because:

> [Sanders] became aware either in November or December 2020, presumably when she received the [n]otice of [o]verpayment from the Division, or in January 2021 when she received the [n]otice of [o]rder [a]ssessment of [o]verpaid [b]enefits by certified mail. [Sanders] testified she contacted the Division on or around January 2021, but did not file her appeal until February 3, 2021. Therefore, the Appeals Tribunal concludes [Sanders] did not act in good faith and reasonably under all the circumstances.

Sanders, once again, filed a single appeal to the Commission in March 2022. The Commission likewise bifurcated the single appeal and then issued its decisions affirming and adopting both the Tribunal's decisions, finding that the decisions were "fully supported by the competent and substantial evidence on the whole record."

Sanders appeals the Commission's findings in both cases, which upon her motion for consolidation are now appealed together.[6]

## Standard of Review

We review the Commission's decisions under the standards set forth in section 288.210. § 288.210; *Biswas*, 496 S.W.3d at 590.[7] Section 288.210 provides:

> Upon appeal no additional evidence shall be heard. The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law.

---

[6] In this consolidated case, the case WD85555 is the initial ineligibility appeal and the case WD85554 is the benefits overpayment appeal.

[7] All statutory references are to the Revised Statutes of Missouri 2016, unless otherwise noted.

> The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
> (1) That the commission acted without or in excess of its powers;
> (2) That the decision was procured by fraud;
> (3) That the facts found by the commission do not support the award; or
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

*Id.* Notably, when the Commission adopts the Tribunal's decision, "we consider the Tribunal's decision to be the Commission's for purposes of our review." *Westbrook v. Div. of Emp. Sec.*, 456 S.W.3d 116, 118 (Mo. App. W.D. 2015) (citation omitted).

We review whether the Commission's factual findings are "supported by competent and substantial evidence." § 288.210; *Ekres v. Div. of Emp. Sec.*, 641 S.W.3d 411, 416–17 (Mo. App. W.D. 2022). If so, our review is "confined to questions of law." § 288.210; *Ekres*, 641 S.W.3d at 417. When reviewing the Commission's factual findings, we "determine whether the Commission, based upon the whole record, could have reasonably made its findings and reached its result." *Ekres*, 641 S.W.3d at 417. (citation omitted); *see Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003). "As required by the Missouri Constitution, this Court reviews the entire record to ascertain whether the Commission's decision is supported by competent and substantial evidence." *Biswas*, 496 S.W.3d at 590; *see* Mo. Const. art. 5, section 18.

We view the evidence objectively and not in the light most favorable to the decision below, but we defer to the Commission's determinations "on matters of witness credibility and resolution of conflicting evidence." *Ekres*, 641 S.W.3d at 417. We, however, "owe no deference to the Commission's conclusions of law or application

9

of the law to the facts, and review such issues *de novo*." *Biswas*, 496 S.W.3d at 590 (citation omitted).

## Legal Analysis

While Sanders initially set forth two points on appeal, Sanders' first point contains three subparts. "A point relied on should contain only one issue, and parties should not group multiple contentions about different issues together into one point relied on." *Ritchie v. Silgan Containers Mfg. Corp.*, 625 S.W.3d 787, 798 n.6 (Mo. App. W.D. 2021) (citation omitted). "Multifarious points preserve nothing for appellate review." *Id.* Sanders' first point relied on is multifarious. But because we prefer to decide cases on their merits, and because we can readily discern and separate Sanders' independent claims of error, we gratuitously exercise our discretion to address Sanders' claims on the merits as we are able. *See, e.g.*, *id.*

In a nutshell, we discern that the crux of Sanders' appeal centers upon (1) whether the Commission erroneously affirmed the Tribunal's decision that Sanders untimely filed her appeal of the ineligibility determination and, if so, whether Sanders had good cause to file an untimely appeal and (2) whether the Commission erroneously affirmed the Tribunal's decision that Sanders untimely filed her appeal that she was overpaid unemployment benefits.

While Sanders raises issues about the merits of the Division's initial determinations, we do not discuss or resolve those issues. "This Court may only address issues that were determined by the Commission and may not consider issues not before the Commission." *Perry v. Tiersma*, 148 S.W.3d 833, 835 (Mo. App. S.D. 2004). The Tribunal, and thereby the Commission, did not decide the merits of either determination, but resolved both only on the timeliness of Sanders' appeals. (LF55

10

"Decision of Appeals Tribunal" pg. 045; LF54 "Decision of Appeals Tribunal" pg. 048). Therefore, we too can only address the issues as to the timeliness and good cause for delay of Sanders' appeals.

## I.    Sanders' Untimely Ineligibility Appeal

"The statutory procedures outlined for appeal in unemployment security cases are mandatory." *Perry*, 148 S.W.3d at 835. An ineligibility determination is final "[u]nless the claimant or any interested party within thirty calendar days after notice of such determination is either delivered in person or mailed to the last known address of such claimant or interested party files an appeal[.]" § 288.070.6; *see also* 8 C.S.R. 10-5.010(5)(A)[8] ("An appeal to a determination or redetermination under section 288.070.6, RSMo, shall be filed within thirty- (30-) calendar days of the date the determination or redetermination was delivered in person or mailed to the appellant's last known address.").

This thirty-day window may be extended for good cause. § 288.070.10. Good cause depends upon "those circumstances in which the party acted in good faith and reasonably under all the circumstances[.]" 8 C.S.R. 10–5.010(2)(C); *see also Biswas*, 496 S.W.3d at 590.

While "'[t]he legislature intended to leave the initial determination as to the existence of good cause with the administrative agency,'" good cause "depends upon the evaluation of many subtle factors." *Biswas*, 496 S.W.3d at 590–91 (quoting *Westbrook*, 456 S.W.3d at 119). Good cause "therefore is subject to judicial review only for abuse of discretion." *Westbrook*, 456 S.W.3d at 119.

---

[8]  All regulatory citations are to Missouri Code of State Regulations (2019).

11

"An abuse of discretion occurs only when the outcome is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. There is no abuse of discretion when reasonable minds could differ as to the final decision of the Commission." *Harden v. Div. of Emp. Sec.*, 655 S.W.3d 796, 800 (Mo. App. S.D. 2022) (citation omitted). "When contemplating good cause, we are bound by the Commission's determination, absent an abuse of discretion, even though we might have reached a different decision had we considered the matter initially." *Westbrook*, 456 S.W.3d at 119 (citation omitted).

The Commission abused its discretion in dismissing Sanders' untimely appeal because good cause existed. Sanders acted in good faith and reasonably under the circumstances because (1) Sanders never received either determination from the Division, (2) the record contains little evidence showing the Division mailed either determination to Sanders, and (3) Sanders appealed as soon as able while navigating a confusing administrative process.

First, section 288.070.6 states that Sanders had thirty days from the time the Division either delivered in person or mailed its ineligibility determination to her last known address to file her appeal. Any appeal after September 23, 2020, the thirty-day deadline listed on the ineligibility determination, does not meet this statutory deadline. Sanders filed her ineligibility appeal on February 3, 2021. Thus, Sanders appealed too late.

Second, though Sanders' appeal was untimely, the Tribunal, and thereby the Commission found, that Sanders did not receive the initial ineligibility determination. In both the ineligibility and overpayment decisions, the Tribunal found that Sanders

12

did not receive either initial determination. Sanders did not know about the September 23, 2020, appeal date listed on the ineligibly determination until far after the deadline had passed because, in addition to not receiving the mailing, she did not have access to her UInteract account until the "first of the year." While Sanders appealed too late, holding Sanders to a deadline of which she was unaware shows a lack of careful consideration by the Tribunal and Commission.

Third, though we generally give the Commission factual deference when resolving conflicting evidence, we find little evidence in the record supporting that the Division mailed the ineligibility or overpayment determinations. Sanders' ineligibility determination states that it was mailed on August 24, 2020, but the record does not contain any envelope or certified mail receipt demonstrating the determination was, in fact, mailed. The record supports that Sanders received a "certified letter," an overpayment assessment, that first notified Sanders that there "was a problem" with her unemployment. The record includes other proof of mailings, including an envelope from Sanders' first appeal, a certificate of mailing, and address cover sheets for both hearing packets sent to Sanders. Yet the record lacks any similar mailing evidence for either determination.

The Division continued to reference this August 24, 2020, date as the "date of determination" in its further orders and appeals decisions, with little to no record evidence that the ineligibility determination was properly mailed to Sanders' address. Sanders' hearing testimony reflects that she did not receive either determination and no testimony established whether the Division actually mailed either determination.

While any number of unfortunate circumstances could prevent Sanders from

13

receiving both determinations, listing the "Date Determination Mailed" does not mean the determination was, in fact, sent. This scant evidence supports finding good cause for the untimely appeal.

Fourth, Sanders acted in good faith and reasonably under the circumstances while navigating the confusing administrative process for both appeals given all of the concerns we address in this opinion. We agree with *Biswas*, which emphasized:

> [I]t is evident that the administrative agency has created an unnecessarily complicated system. We fail to comprehend the need for two separate "determinations" by the administrative agency[.] . . . Certainly, it is not difficult to imagine the confusion this can generate. Nevertheless, in an already complicated administrative construct, Claimant, at least, timely pursued a review of the [determination], indicating good faith and a lack of apathy.

496 S.W.3d at 592. So too did Sanders make a good faith attempt to navigate the unnecessarily complicated appeals process. Sanders did not receive either determination, both in August and in November 2020. Sanders also could not access her UInteract portal to see these determinations.

The only physical documents Sanders received prior to filing her initial appeal were two certified letters titled "Order Assessment of Overpaid Benefits," stating, "This assessment will become final unless a petition for reassessment is filed with the Division of Employment Security by 02-19-2020." (LF54 pg. 038; WD55 Tr. pg. 064). Rightfully confused, Sanders appealed more than two weeks before this deadline, on February 3, 2021. If Sanders had received the initial determinations, like *Biswas*, it is likely that Sanders would have timely appealed. *See Biswas*, 496 S.W.3d at 592.

Not only did the overpayment assessment documentation that Sanders received have a completely different appeal date, the Division also bifurcated Sanders' appeal without her knowledge. Sanders only learned the Division separated her single appeal

14

into two when she obtained a copy of the legal file. The record reflects this bifurcation, as Sanders' initial appeal and her application for review are identical in the legal files of both consolidated cases.

Even the Division confused its own administrative process. In April 2021, the Division sent Sanders two separate orders of dismissal—both only referencing Sanders' benefits overpayment appeal—followed by Sanders' single request to reconsider these dismissal orders. Yet, despite receiving only one request for reconsideration, the Division scheduled phone hearings for both appeals.

Adding further confusion, the Tribunal held Sanders' benefits overpayment hearing approximately two months *before* hearing Sanders' ineligibility appeal. Then, the Tribunal issued the decision on Sanders' benefits overpayment *before* the decision on Sanders ineligibility appeal, patently putting the cart before the horse. The Division further muddled its own procedures by having four separate appeals referees handle Sanders' appeals, each time with a different referee hearing the evidence and a different referee authoring the decisions.[9]

The Commission therefore abused its discretion in dismissing Sanders' appeal as untimely because good cause clearly existed for the late filing. Given the confusing circumstances of Sanders' bifurcated appeal and the lack of record support showing Sanders was properly informed of either determination, we find that Sanders had good cause for filing her appeal late in February 2021. Thus, we reverse and remand the

---

[9] Sanders did not raise the issue on appeal that her case was handled by different hearing and writing referees. *Lienhard*, a case decided after the Division handled Sanders' appeals, holds that the Division must give a reason for reassigning an appeal from the initial hearing referee who heard live witness testimony to another referee for writing the decision. *See Lienhard v. Total Lock & Sec., Inc.*, No. ED110246 *passim* (Mo. App. E.D. Dec., 27, 2022) (published but not final as of the time of this opinion); *see also* 8 C.S.R. 10-5.015(11)(A).

ineligibility appeal for a hearing on the merits.

Point one is granted.

## II.     Sanders' Untimely Benefits Overpayment Appeal

The Division should not have heard and decided Sanders' benefits overpayment appeal before first determining whether Sanders was eligible for unemployment benefits in the first place. A person may owe the Division for the overpayment of unemployment benefits under section 288.380.13[10] if he or she received benefits either "by reason of any error or omission or because of a lack of knowledge of material fact on the part of the [D]ivision" or "while such person was disqualified from receiving benefits." § 288.380.13. An appeal of a benefits overpayment determination under section 288.380.13 must be filed within "thirty- (30-) calendar days of the date the determination or redetermination was delivered in person or mailed to the appellant's last known address." 8 C.S.R. 10-5.010(5)(C).

Sanders' initial Overpayment Determination states that Sanders owed the Division because she was "paid during a period of ineligibility." In its April 2021 order dismissing her initial appeal, the Division again found that "claimant was paid benefits

---

[10] Section 288.380.13 states in full:

Any person who, by reason of any error or omission or because of a lack of knowledge of material fact on the part of the division, has received any sum of benefits pursuant to this chapter while any conditions for the receipt of benefits imposed by this chapter were not fulfilled in such person's case, or while such person was disqualified from receiving benefits, shall after an opportunity for a fair hearing pursuant to subsection 2 of section 288.190, in the discretion of the division, either be liable to have such sums deducted from any further benefits payable to such person pursuant to this chapter, or shall be liable to repay to the division for the unemployment compensation fund a sum equal to the amounts so received by him or her. The division may recover such sums in accordance with the provisions of subsection 14 of this section. However, the division may elect not to process such possible overpayments where the amount of same is not over twenty percent of the maximum state weekly benefit amount in effect at the time the error or omission was discovered.

16

for a period of ineligibility." The Tribunal's final decision reiterates that Sanders was "paid benefits during a period of ineligibility."

But the Tribunal did not first determine whether Sanders was eligible for unemployment benefits, having improperly dismissed her ineligibility appeal without reaching its merits. Because we find in point one that the Tribunal failed to properly hear the merits of Sanders' ineligibility appeal, the overpayment determination appealed in point two must necessarily be reversed and remanded as well for further proceedings consistent with this opinion once the Division properly hears Sanders' ineligibility appeal on the merits.

## Conclusion

For the foregoing reasons, we reverse the Commission's decisions and remand both cases to the Commission for further proceedings consistent with this opinion.

_____
Janet Sutton, Judge

Gabbert, P.J. and Thomson, J. concur.

17